JUSTICE TRIEWEILER
dissents.
¶94 I dissent from the majority’s decision to reverse the order of the District Court- and remand for further proceedings to determine whether K.G.F. received effective assistance of counsel.
¶95 Although I disagree with the ultimate result arrived at by the majority, I do not disagree with most of what is said in the majority opinion.
¶96 For example, I agree that when a person is subject to involuntary commitment for mental illness, that person has a right to effective assistance of counsel pursuant to Article II, Section 17, of the Montana *21 Constitution. I agree that that right is independent of the Sixth Amendment to the United States Constitution and Article II, Section 24, of the Montana Constitution; and I agree that Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is not a helpful analytical tool for evaluating whether effective assistance of counsel was provided.
¶97 I agree in general that in determining whether effective assistance of counsel has been provided in a commitment proceeding, it is appropriate to consider the five factors established by the National Center for State Court Guidelines for involuntary civil commitment. However, I believe the application of those five factors will vary from case to case depending on the circumstances and disagree with the formalistic way in which they have been imposed by the majority.
¶98 For example, the extent of the investigation necessary will depend greatly on the nature of the allegations made by the initiating authority and there is no need for this Court to decide ahead of time what the details of each investigation should include. The nature and extent of useful information that can be exchanged at the client interview will depend to a large extent on the mental health of the client. Although I have no disagreement with providing a right to counsel during the examination by the court-appointed professional person,. I think it inconsistent that someone involved in a civil commitment proceeding which is for that person’s own protection and to which no Fifth Amendment rights attach is afforded a greater right to remain silent and assistance of counsel than is afforded in a criminal proceeding where the ultimate result is punishment and imprisonment. See Dawson v. State, 2000 MT 219, ¶¶ 46-48, 301 Mont. 135, ¶¶ 46-48, 10 P.3d 49, ¶¶ 46-48. Finally, while I believe that counsel had an adversarial role to play in a civil commitment proceeding, I believe that counsel’s primary obligation is to see that all procedural safeguards are followed and that the State meets its burden of proof. The purpose of involuntary commitment proceedings is to secure skillful and humane treatment for people suffering from a mental disorder which makes them a danger to themselves or others. While no one should have to bear the stigma of mental illness without being afforded full due process, due process does not require suppressing evidence of a person’s intent to harm himself or herself in the name of effective advocacy. I believe that Montana’s Involuntary Commitment Act sets forth the basic elements necessary to provide due process as guaranteed by Article II, Section 17, of the Montana Constitution. Those elements are found at § 53-21-115, MCA.
¶99 My problem with the majority opinion is that I can find no evidence in the record that K.G.F.’s counsel was ineffective. There is no indication in the pleadings, transcript, nor briefs filed on appeal that any of the procedural rights statutorily afforded to K.G.F. were denied based on ineffective assistance of counsel. Furthermore, it is clear from the transcript of the hearing that the State was held to its burden of proving that K.G.F. suffered from a mental disorder which threatened her own well being.
*22 ¶100 The issues in this case were not that complicated. Proceedings were initiated when Nancy McVean, case coordinator at St. Peter’s Hospital, notified the county attorney that K.G.F. suffered from a mental disorder which, when combined with her refusal to take medication, made her a danger to her own well being. McVean reported that on October 19,1999, K.G.F. discharged her psychiatrist and reported to his office that she had a plan to kill herself. After her threat was reported to the sheriff, she agreed to voluntarily commit herself to St. Peter’s Hospital. However, after having a disagreement over medication that was prescribed, she announced her intention to leave. In the opinion of the health care staff at St. Peter’s, she did not improve while hospitalized and was at a high risk for suicide if she left the hospital without further care. Therefore, the petition for commitment was filed on October 26,1999. The petition complied with all the requirements of § 53-21-121, MCA, and no one contends otherwise.
¶101 Immediately after the petition was filed, counsel was appointed to represent K.G.F. pursuant to § 53-21-116 and, most importantly, she was provided with an independent professional examination pursuant to § 53-21-118, MCA.
¶102 At the hearing which was held the following day, the State produced testimony from Nancy McVean who described the history which led K.G.F. to the hospital and further reported an actual suicide attempt by K.G.F. a matter of four months earlier. She reported the diagnosis of bipolar disorder and expressed the opinion that K.G.F. was a danger to herself because of her suicidal inclinations. McVean recommended a community commitment as the least restrictive alternative to stabilize KG.F.’s condition before discharging her to aftercare services on an out-patient basis in Bozeman.
¶103 McVean was cross-examined about the drugs which had been prescribed for K.G.F. at St. Peter’s Hospital and their side effects.
¶104 Counsel for K.G.F. then called Nancy Adams, an independent professional person, who disputed McVean’s opinion that K.G.F. was a threat to herself but agreed that she should be treated further before being released from the hospital. Adams also disagreed that commitment to a community healthcare facility was necessary. It was her opinion that following a period of voluntary treatment at the hospital, K.G.F. could be successfully treated on an outpatient basis in Bozeman.
¶105 K.G.F. testified and agreed that she needed treatment. However, her preference was to receive treatment from a clinical professional and psychiatrist in Bozeman with whom she was already familiar.
¶106 Importantly, neither Adams nor K.G.F. disagreed with the diagnosis reported by McVean. Neither disputed that K.G.F. had previously attempted suicide in June and threatened suicide again two days before her admission to the hospital.
¶107 Counsel had an obligation to serve his client effectively, however, effective representation cannot change reality. In a civil *23 commitment proceeding, if there is no question about a person’s mental disorder and no question about the fact that that person presents a danger to herself, then counsel is left to argue for the least restrictive form of commitment. That is exactly what KG.F.’s counsel did.
¶108 The District Court listened to the evidence presented by the State and the independent professional person called on K.G.F.’s behalf. The District Court had an opportunity to observe K.G.F. during her testimony and consider her prior history of refusing to follow through with voluntary commitment following threats of suicide and chose to accept the recommendation of the State’s witness rather than KG.F.’s witness.
¶109 No one contends that the District Court’s findings are not supported by substantial evidence nor does anyone claim that its conclusions of law are incorrect. Nor in the majority opinion is there any example of inadequate performance by K.G.F.’s counsel.
¶110 My concern is this. Having adopted the five-part criteria for evaluating effective assistance of counsel, does this now mean that following every civil commitment proceeding, a separate hearing will be required to determine the extent of counsel’s experience in civil commitment proceedings, the nature and extent of his initial investigation, and the detail provided during his client interview? None of these facts will be apparent from the record and in this record there is nothing to indicate that any of these responsibilities were performed inadequately. How then is this case to be distinguished from any civil commitment appealed in the future?
fill While I agree with the general principles established in the majority opinion and applaud the majority’s efforts to guarantee consistently capable representation for those people subject to civil and voluntary commitment proceedings, I am concerned about some of the practical effects of the majority opinion and particularly disagree that there is any basis for reversing and remanding the District Court’s order in this case. After thoroughly reviewing the record, I can find no evidence that the attorney who represented K.G.F. acted ineffectively or that K.G.F. was denied any of the procedural rights to which she is entitled pursuant to Article II, § 17 of the Montana Constitution and Title 53, Chapter 21, Part 1, of the Montana Code. Therefore, I dissent from the majority’s decision to reverse the order of the District Court and remand to the District Court for further proceedings.